IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

EDELMAN FINANCIAL ENGINES,
LLC,

        **Plaintiff,**

v.

ERIK HARPSOE and
BRIAN K. FOWLES,

        **Defendants.**

Case No. 19-2026-DDC-GEB

## MEMORANDUM AND ORDER GRANTING TEMPORARY RESTRAINING ORDER

Plaintiff Edelman Financial Engines, LLC ("Edelman FE"), asserts claims for damages against defendants Erik Harpsoe and Brian K. Fowles. Doc. 1. Plaintiff also has filed a Motion for Temporary Restraining Order. Doc. 4. On January 24, 2019, the court conducted a hearing on plaintiff's motion with counsel for plaintiff and defendants present.

Based on the conclusions and findings below, the court grants plaintiff's Motion for Temporary Restraining Order under Federal Rule of Civil Procedure 65.

**I.  Background**

The following facts are alleged in plaintiff's Verified First Amended Complaint (Doc. 3) and contained in the exhibits attached to its Verified First Amended Complaint. Plaintiff operates a national investment advising system. Two separate companies, Financial Engines and Edelman Financial Services, merged in 2018 to form plaintiff. In February 2016, Financial Engines acquired a Kansas City business called The Mutual Fund Store ("TMFS"). TMFS has since become a part of plaintiff because of Financial Engines' merger with Edelman Financial

Services.  TMFS's principal place of business was in Overland Park, Kansas, and plaintiff now operates in part in Kansas.

Defendants were employed by TMFS, Financial Engines, and—finally—plaintiff.  While working for plaintiff, defendants signed several agreements governing their contractual obligations with plaintiff.  The first of these agreements, which defendants signed in 2011, restricts the use of confidential client information owned by plaintiff.  The 2011 agreement prohibits:  (1) using or disclosing confidential information except in the course of proper employment performance; and (2) copying or reproducing confidential information for use outside proper employment duties.  The 2011 agreement requires that employees return confidential information and any copies of that information at the end of their employment.  Doc. 3-1 at 3 (defendant Harpsoe's 2011 agreement), 11 (defendant Fowles's 2011 agreement).

The 2011 agreement also prohibits defendants from "solicit[ing], divert[ing], or tak[ing] away"—or attempting to solicit, divert, or take away—the business of plaintiff's "Customers" for one year after each employee's last day of work.  *Id.* at 4 (defendant Harpsoe's 2011 agreement), 12 (defendant Fowles's 2011 agreement).  Also, former employees cannot cause or attempt to cause plaintiff's "Customers" to end or reduce their relationships with plaintiff, this agreement provides.  *Id.*  The 2011 agreement defines "Customers" as

> (i) TMFS customers served by Employee at any time during Employee's final two years of employment with TMFS, (ii) customers serviced by TMFS personnel during Employee's final two years of employment with TMFS, if Employee had supervisory duties over the personnel providing such service at the time it was provided, (iii) customers with respect to which Employee had Confidential Information at any time during Employee's final two years of employment with TMFS, and (iv) prospective TMFS customers that Employee solicited or had material contact with, or about whom Employee had access to Confidential Information, at any time during Employee's final two years of employment with TMFS.

*Id.* at 3 (defendant Harpsoe's 2011 agreement), 11 (defendant Fowles's 2011 agreement); *see also* Doc. 3-2 at 2–3 (both defendants' 2016 agreements with plaintiff provide that "[t]he term[] . . . 'TMFS' as used in the [employees' earlier] Agreement shall be deemed to include Financial Engines and its subsidiaries and successors"). And in 2016, defendants signed another agreement requiring them to provide four weeks' notice before terminating their employment with plaintiff. Doc. 3-3 at 2.

Defendants both resigned from their employment with plaintiff on January 17, 2019. They had not provided four weeks' notice of their resignation, as required by their 2016 agreements. After resigning, defendants sent a letter announcing their new business, Century Wealth Partners. Pl.'s Ex. 7. The announcements, mailed to defendants' former customers from their employment with plaintiff, contain the name of their new firm, contact information, and pictures of defendants. Plaintiff's evidence at the temporary restraining order hearing provided a credible basis for an inference that defendants, before resigning, had accessed plaintiff's business records and collected contact information about plaintiff's customers. The bottom of the announcement contains some language explaining that the letters are not solicitations. Plaintiff argues that these communications violate the provisions prohibiting the use of confidential information and solicitation in defendants' agreements, described above.

## II.     Legal Standard

Federal Rule of Civil Procedure 65(b)(1) authorizes the court to issue a temporary restraining order without written or oral notice to the adverse party only if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1). When addressing a motion for a temporary restraining order, the court applies the same standard as it applies to a motion for preliminary injunction. *Sac & Fox Nation of Mo. v. LaFaver*, 905 F. Supp. 904, 907 (D. Kan. 1995). This standard requires the moving party to establish that: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "The issuance of a temporary restraining order or other preliminary injunctive relief is within the sound discretion of the district court." *Sac & Fox Nation*, 905 F. Supp. at 906.

## III. Analysis

### A. Defendants' Pending Case in the Northern District of Ohio

The court recognizes that defendants in this case have filed an action seeking declaratory judgment in the Northern District of Ohio ("the Ohio case"). *Fowles v. Fin. Engines, Inc.*, No. 1:19-cv-00139-JG (N.D. Ohio Jan. 17, 2019). The Tenth Circuit has adopted the "first-to-file" rule, which "permits a district court to decline jurisdiction where a complaint raising the same issues against the same parties has previously been filed in another district court." *Wallace B. Roderick Revocable Living Tr. v. XTO Energy, Inc.*, 679 F. Supp. 2d 1287, 1296 (D. Kan. 2010) (citing, among other Tenth Circuit cases, *Hospah Coal Co. v. Chaco Energy Co.*, 673 F.2d 1161, 1163 (10th Cir. 1982)); *see also Boilermakers Nat'l Health & Welfare Tr. v. Steele*, No. 09-2329-JAR, 2010 WL 2287477, at *5 (D. Kan. June 2, 2010). "Substantial similarity in the parties and issues is sufficient to invoke application of the rule." *Ed Tobergte Assocs., Inc. v. Zide Sport Shop of Ohio, Inc.*, 83 F. Supp. 2d 1197, 1198 (D. Kan. 1999) (citing *Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc.*, 713 F.2d 1477, 1485 (10th Cir. 1983)).

4

But our court has outlined some exceptions, as the first-to-file rule is not a "hard and fast" one. *Id.* "Courts have carved out an exception where the first-filed suit constitutes an improper anticipatory filing, or one made under the threat of a presumed adversary filing the mirror image of that suit in a different district." *Boilermakers Nat'l Health & Welfare Tr.*, 2010 WL 2287477, at *5. And "when competing actions are filed within a short time of each other, courts may disregard the first-filed rule." *Id.* at *6.

Defendants filed the Ohio case a little over two hours before plaintiff filed its suit in this court. And they filed that suit in the evening of the same day when they informed plaintiff of their resignations. Both suits involve substantially the same parties, though the Ohio case adds entities related to Edelman FE as defendants. *Fowles v. Fin. Engines, Inc.*, No. 1:19-cv-00139-JG (N.D. Ohio Jan. 17, 2019). Defendants in this case base their Complaint in the Ohio case on the same agreements—and, specifically, some of the same provisions—that plaintiff incorporates into its Complaint here. *Compare* Doc. 3 at 6–12 *with* Complaint at 5–13, *Fowles v. Fin. Engines, Inc.*, No. 1:19-cv-00139-JG (N.D. Ohio Jan. 17, 2019), ECF No. 1.

For now, based on the findings and conclusions set forth below, the court grants plaintiff's motion for a temporary restraining order. But the court remains cognizant of the overlapping issues between this matter and the pending Ohio case. The court plans to discuss its concerns about proceeding further in this case in a forthcoming order addressing other papers the parties have filed with this court.

### B. Plaintiff's Motion for Temporary Restraining Order

Here, plaintiff satisfactorily has shown a substantial likelihood that it will prevail on the merits of its contract claims. The court finds that plaintiff will suffer irreparable harm unless defendants are restrained temporarily from further breaching their agreements with plaintiff. *See*

*Amedisys, Inc. v. Interim Healthcare of Wichita, Inc.*, No. 14-1357, 2015 WL 1912308, at *2 (D. Kan. Apr. 27, 2015) ("Loss of customers, loss of goodwill, and threats to a business['s] viability have been found to constitute irreparable harm. . . . Unfair competition resulting from a breach of covenant not to compete is likely to constitute irreparable harm." (internal quotations and citations omitted)); *Hall v. Edgewood Partners Ins. Ctr., Inc.*, 878 F.3d 524, 530 (6th Cir. 2017) (explaining that "loss of customer goodwill and fair competition resulting from breach of a restrictive covenant constitutes irreparable harm"). And because defendants' actions will continue to affect the goodwill and relationships between plaintiff and its customers, monetary relief will not compensate plaintiff adequately for the harm it will sustain.

The agreements defendants signed temporarily prohibit them from engaging with plaintiff's "Customers"—as that term is defined in the 2011 agreements—for one year after their last day of employment. These agreements do not broadly restrict defendants' rights to compete in the investment advising field. The court thus concludes that the future threat plaintiff faces, described above, outweighs any harm defendants may experience resulting from this temporary restraining order. And finally, both Kansas and Ohio law recognize the public policy of enforcing valid non-compete contractual covenants. *See Weber v. Tillman*, 913 P.2d 84, 96 (Kan. 1996) ("Although restrictive provisions in contracts of employment must be reasonable and not such as to contravene the public welfare, the paramount public policy is that freedom to contract is not to be interfered with lightly."); *FirstEnergy Sols. Corp. v. Flerick*, 521 F. App'x 521, 529 (6th Cir. 2013) ("'[T]he public interest is always served in the enforcement of valid restrictive covenants contained in lawful contracts.'" (quoting *Nat'l Interstate Ins. Co. v. Perro*, 934 F. Supp. 883, 891 (N.D. Ohio 1996) (applying Ohio law))).

Plaintiff thus has satisfied each of the four factors required for the court to issue a temporary restraining order. For 14 days from the entry of this Order, unless modified sooner by an order of this court, it is hereby ordered that defendant Harpsoe and defendant Fowles and their officers, agents, servants, employees, and other persons acting in concert or participation with them, including Century Wealth Partners, who receive actual notice of this Order by personal service or otherwise, are temporarily enjoined and restrained from, directly or indirectly:

> violating the terms of defendants' agreements, including by soliciting, diverting, or taking away, or attempting to solicit, divert, or take away from Edelman FE, the business of Edelman FE's "Customers"—as that term is defined in the 2011 agreements—for the purpose of selling or providing to or servicing for any such "Customer" any product or service which was provided by Edelman FE at any time during defendants' employment with Edelman FE (or which product or service is a substitute therefor or competes therewith);
>
> causing or attempting to cause any of Edelman FE's "Customers" to terminate or reduce their existing relationships with Edelman FE;
>
> using, disclosing, copying, communicating, or distributing any of plaintiff's trade secret information or other confidential information; and
>
> avoiding or attempting to avoid providing discovery in this litigation by purging, destroying, altering, modifying, or concealing any other Edelman FE trade secret or other confidential information, whether in original, copied, computerized, handwritten, or any other form.

The court also orders defendants to return immediately any documents—regardless of form, medium, or whether they are original or copied—containing any of plaintiff's trade secret information or other confidential information.

The court further orders that plaintiff shall give security for this temporary restraining order in the amount of $100,000 on or before **Tuesday, January 29, 2019**.

This Order will remain in effect, unless modified sooner, for 14 days from the time and date shown below.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff's Motion for Temporary Restraining Order (Doc. 4) is granted, as detailed in this Order.

**IT IS FURTHER ORDERED THAT** counsel for the parties shall contact Deputy Clerk Megan Garrett at ksd_crabtree_chambers@ksd.uscourts.gov to arrange a hearing on plaintiff's request for a preliminary injunction.

**IT IS SO ORDERED.**

**Dated this 25th day of January, 2019, at 4:11 p.m., at Kansas City, Kansas.**

<u>**s/ Daniel D. Crabtree**</u>
**Daniel D. Crabtree**
**United States District Judge**